# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

JOHN MICHAEL SMITH,        )
                                )
        Plaintiff,        )
                                )     Civil Action No. 2:11-0011
v.                          )     Judge Nixon / Knowles
                                )
CAROLYN W. COLVIN,        )
Acting Commissioner of Social Security,[1]  )
                                )
        Defendant.        )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Insurance ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

Case 2:11-cv-00011   Document 18   Filed 04/12/13   Page 1 of 23 PageID #: 367

be AFFIRMED.

# I.  INTRODUCTION

Plaintiff filed his applications for DIB and SSI on May 14, 2008,[2] alleging that he had been disabled since May 14, 2006, due to social phobia and depression.  *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 11, 42-43, 99-105, 106-12, 117, 122.  Plaintiff's applications were denied both initially (TR 38, 39) and upon reconsideration (TR 40, 41).  Plaintiff subsequently requested (TR 61) and received (TR 69-74) a hearing.  Plaintiff's hearing was conducted on March 17, 2010, by Administrative Law Judge ("ALJ") James A. Sparks.  TR 24.  Plaintiff and vocational expert ("VE"), Edward M. Smith, appeared and testified.  *Id.*

On May 10, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 11-19.  Specifically, the ALJ made the following findings of fact:

> 1. Claimant meets the insured status requirements of the Social Security Act through June 30, 2010.
>
> 2. Claimant has not engaged in substantial gainful activity since May 14, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. Claimant has the following severe impairments: affective disorder and anxiety-related disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[2]Plaintiff's protective filing date was May 12, 2008.  TR 117.

5.  After careful consideration of the entire record, the undersigned finds claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: claimant should avoid work with the public and should not have frequent interaction with others. He should work with things instead of people.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  Claimant was born on September 4, 1977 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  Claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. Claimant has not been under a disability, as defined in the Social Security Act, from May 14, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 13-18.

On May 18, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 5-7. On December 3, 2010, the Appeals Council issued a letter declining to review the case (TR 1-4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a

3

whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence

4

supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

5

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

6

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) improperly discounting Plaintiff's credibility; 2) failing to determine that Plaintiff meets or medically equals Listing 12.04; and 3) improperly determining that Plaintiff has the Residual Functional Capacity ("RFC") to work on a regular and continuing basis.  Docket No. 15.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C.   § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and

7

immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Plaintiff's Credibility

Plaintiff contends that the ALJ improperly discounted his credibility. Docket No. 15. Specifically, Plaintiff maintains that the ALJ addressed his credibility using boilerplate language rather than specifically explaining the rationale for his credibility findings as required by the Regulations. *Id.* Plaintiff particularly takes issue with the ALJ's determination that Plaintiff had not reported suicidal thoughts to his treating mental health providers and that Plaintiff's subjective remarks regarding his suicidal thoughts and ideations were inconsistent with the treatment records from Plateau Mental Health Center. *Id.* Plaintiff notes that Dr. Dorothy Tucker and Mr. Jerell Killian, a senior psychological examiner, determined that his statements were credible and that Plaintiff "seemed to attempt an honest presentation." *Id.*

Defendant responds that the ALJ properly discounted Plaintiff's credibility. Docket No. 16. Specifically, Defendant maintains that the ALJ provided sufficient reasons for discounting Plaintiff's subjective complaints, and that the ALJ explained that Plaintiff's testimony was contradictory and vague. *Id.* Defendant argues that the opinion of Dr. Tucker and Mr. Killian that Plaintiff's remarks to them were credible does not bear on whether Plaintiff's claims at the hearing were credible. *Id.* Defendant notes that Plaintiff's descriptions of his symptoms at the hearing were in fact more severe than the symptoms Plaintiff had described to Mr. Killian. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of disabling symptoms:

8

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir.

9

1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are credible only to the extent they are consistent with the above residual functional capacity assessment." TR 16.   Specifically, the ALJ noted:

> Claimant alleges he experiences symptoms of anxiety and depression.  He reported he is unable to be around people due to enormous fear and it is difficult for him to go outside during the day.  Claimant alleges his impairments cause difficulty with hearing, memory, completing tasks, concentration, understanding, following instructions, and getting along with others.
>
> In reference to activities of daily living, claimant has the ability to bathe and feed himself.  He lives with his father and step-mother because he was evicted from his apartment for not paying rent.  He stated everyone shares the responsibility of completing household chores.  Claimant reportedly prepares simple meals, grocery shops, and does laundry.  He belongs to a church and frequently reads the bible.  For recreation claimant watches television and surfs the internet.
>
> In terms of claimant's allegations, the undersigned finds his testimony contradictory and vague.  Claimant has reported different symptoms at different times to different physicians.  During an appointment at Plateau Mental Health Center, claimant stated he did not experience any relief from an increase to his prescription.  However, during that same appointment claimant later reported his depression symptoms had improved.  Additionally, claimant described death wishes consisting of hanging himself to Emily Rummel, M.A.  Claimant specifically stated physicians at Plateau Mental Health Center were aware of his thoughts.  However, numerous records from Plateau Mental Health Center indicate claimant did not experience suicidal thoughts or ideations.

TR 16, *citing* TR 151-61, 223, 244-71.

As can be seen, the ALJ's decision specifically addresses Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. TR 16.

Plaintiff specifically argues that it is illogical to call inconsistent the fact that Plateau Mental Health Center shows no documentation of Plaintiff's suicidal thoughts although Plaintiff claimed that physicians there were aware of these thoughts. Docket No. 15. Plaintiff argues that his statement was credible because Plaintiff had communicated his suicidal thoughts to Mr. Killian during his consultative examination of Plaintiff, and Mr. Killian had treated Plaintiff professionally at Plateau Mental Health Center. *Id.* Plaintiff contends that Mr. Killian would therefore be charged with communicating Plaintiff's suicidal ideations to other physicians at Plateau Mental Health Center. *Id.* Contrary to Plaintiff's argument, there is no evidence that Mr. Killian treated Plaintiff at Plateau,[4] was charged with communicating, or did, in fact, communicate, his knowledge of Plaintiff's suicidal thoughts to other treatment professionals at Plateau Mental Health Center.

Moreover, while Plaintiff had alleged suicidal thoughts during his examination by Ms. Rummel, at the hearing, and at his initial evaluation at Plateau, he repeatedly denied suicidal thoughts to his treating providers at Plateau and had explained that suicide was not an option for him religiously. *See* TR 213. The record supports the ALJ's finding that treatment notes from Plateau Mental Health Center failed to indicate that Plaintiff was experiencing suicidal thoughts

─────────────

[4] Mr. Killian's electronic signature appears on one page of Plaintiff's May 29, 2008 medical records, under the signature of Mr. Miller, Plaintiff's treating therapist. TR 215. In a July 2008 report, however, Mr. Killian noted that he had previously done a vocational evaluation of Plaintiff, but did not mention that he had ever treated Plaintiff. TR 223.

11

or ideations.  TR 16, 244-71.

Additionally, Plaintiff's contention that he is credible because Mr. Killian and Dr. Tucker found him so is unpersuasive.  On July 2, 2008, Mr. Killian conducted a psychological examination of Plaintiff, which the ALJ discussed:

> As for the opinion evidence, consultative examiner, Jerell F. Killian, M.S., assessed claimant's condition in July of 2008.  Mr. Killian noted claimant appeared somewhat anxious during the examination, but showed no signs of serious emotional distress. He diagnosed claimant with generalized social phobia and major depressive disorder.  He ruled out a personality disorder diagnosis. He opined claimant's depression and anxiety caused limitation in interpersonal relationships; however, claimant showed adequate reasoning, comprehension, and memory for simple, one and two step activities.

TR 16, *citing* TR 222-25.

On July 25, 2008, Dr. Tucker evaluated Plaintiff, which the ALJ also discussed:

> A State Agency reviewer found claimant will experience some, but no substantial difficulty in interacting with supervisors and co- workers. . . . Both reviewers noted claimant would work better with things rather than people.
> 
> . . .
> 
> . . . A State Agency reviewer found claimant has the ability to understand, remember, and sustain concentration and persistence to complete simple and detailed, non-complex tasks.  Claimant has the ability to set limited goals and adapt to infrequent change.

TR 14, *citing* TR 242.

As can bee seen, the ALJ considered the opinions of both Mr. Killian and Dr. Tucker. There is nothing in the Regulations, however, that requires the ALJ to simply accept their assessments of Plaintiff's credibility.  As has been explained above, their opinions contradict other substantial evidence in the record. Moreover, the evaluation of Plaintiff's credibility is not

a medical determination, and the final decision regarding the weight to be given to assessments of Plaintiff's credibility lies with the Commissioner. 20 C.F.R. § 416.927(e). As such, the Regulations do not mandate that the ALJ simply accept Mr. Killian or Dr. Tucker's credibility determination regarding Plaintiff.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters,* 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler,* 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary,* 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky,* 35 F.3d at 1036), and the reasons must be supported by the record (*see King,* 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff's testimony regarding his symptoms and impairments was not credible. TR 16. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the

13

decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 2. Meeting or Equaling Listing 12.04

Plaintiff contends that the ALJ erred in determining that he does not meet or medically equal Listing 12.04. Docket No. 15. Specifically, Plaintiff maintains that Ms. Rummel's opinion shows that Plaintiff has marked restrictions in activities of daily living and extreme difficulties in social functioning. *Id.* Plaintiff continues that Ms. Rummel opined that he suffered from anhedonia, appetite disturbance, decreased energy, feeling of guilt or worthlessness, sleep disturbance, paranoid thinking or inappropriate suspiciousness, and illogical thinking. *Id.* Plaintiff contends that the ALJ improperly rejected Ms. Rummel's opinion because she "relied heavily on the claimant's subjective complaints," arguing that objective medical evidence is not necessary to support a claim of a mental impairment. *Id.* Further, Plaintiff maintains that there is considerable proof that he suffered episodes of decompensation, including difficulty when taking Prozac, suicidal thoughts and hostility when taking Wellbutrin, and an inability to maintain employment. *Id.* Finally, Plaintiff highlights that he has never scored above 50 in a Global Assessment of Functioning (GAF), and notes that Ms. Rummel assessed him with a GAF score of 46. *Id.*

Defendant responds that the ALJ properly determined that Plaintiff did not meet Listing 12.04. Docket No. 16. Specifically, Defendant claims that the ALJ properly discounted Ms. Rummel's opinion because she relied heavily on Plaintiff's subjective complaints, which were inconsistent with the record. *Id.* Regarding episodes of decompensation, Defendant maintains that neither of the state agency consultants found that Plaintiff had experienced any episodes of

decompensation and maintains that there is no evidence in the record from Plateau Mental Health Center that Plaintiff experienced worsened symptoms or hospitalization for his mental impairments. *Id.* Defendant contends that any alteration in Plaintiff's medication was caused by his own failure to consistently follow his Prozac regimen. *Id.* Defendant also responds that there is no evidence that taking Wellbutrin resulted in any episodes of decompensation and argues that Plaintiff's inability to keep a job likewise does not constitute an episode of decompensation. *Id.* Finally, Defendant argues that it is well-settled that GAF scores do not have a direct correlation to the severity requirements of the Listings, and notes that the Commissioner has declined to endorse the use of GAF scores in determining disability. *Id.* Accordingly, Defendant asserts that Plaintiff's GAF scores do not indicate that he meets Listing 12.04. *Id.*

Listing 12.04 "Affective Disorders," states as follows:

12.04 *Affective disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in *both* A *and* B are satisfied, *or* when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or

15

g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions, or paranoid thinking;

AND

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 CFR pt. 404, subpt. P, app.1 12.04 (Emphasis added).

The ALJ in the case at bar determined that Plaintiff's severe impairments included affective disorder, but ultimately found that Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." TR 13-14. Specifically, the ALJ explained that Plaintiff did not satisfy the "paragraph B" or "paragraph C" criteria. *Id.* Regarding the "paragraph B" criteria, the ALJ stated:

In activities of daily living, claimant has moderate restriction. He is able to bathe and feed himself. Claimant lives with his father

16

and step-mother because he was evicted from his apartment for not paying rent. He stated everyone shares the responsibility of completing household chores. Claimant prepares simple meals and does laundry. He belongs to a church and frequently reads the bible. For recreation, claimant watches television and surfs the internet.

In social functioning, claimant has moderate difficulties. A State Agency reviewer found claimant will experience some, but no substantial difficulty in interacting with supervisors and co-workers. A second State Agency reviewer opined claimant should not have frequent interaction with others and should avoid work with the public. Both reviewers noted claimant would work better with things rather than people.

With regard to concentration, persistence or pace, claimant has moderate difficulties. A State Agency reviewer found claimant has the ability to understand, remember, and sustain concentration and persistence to complete simple and detailed, non-complex tasks. Claimant has the ability to set limited goals and adapt to infrequent change. A second State Agency reviewer found claimant has the ability to remember locations and work like procedures. The reviewer opined claimant would likely have some, but no substantial difficulty maintaining concentration to perform routine daily activities and complete a normal work week with acceptable performance and productivity.

As for episodes of decompensation, claimant has experienced no episodes of decompensation, which have been of extended duration. There is no documented evidence claimant has required prolonged hospitalization for psychiatric treatment.

Because claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

TR 14-15, *citing* TR 223, 242, 288.

As has been noted, in order to meet or medically equal Listing 12.04, Plaintiff must

satisfy the paragraphs A *and* B criteria, *or* the paragraph C criteria. Plaintiff takes issue with the

ALJ's findings, and contends that Ms. Rummel's March 3, 2010 report shows that he satisfies at

17

least four of the "paragraph A" criteria *and* the specific "paragraph B" criterion of marked restrictions of activities of daily living and extreme difficulties in social functioning.  Docket No. 15.

On March 3, 2010, Ms. Rummel, a senior psychological examiner and health service provider, conducted a psychological evaluation of Plaintiff at the request of his attorney.  TR 290-97.  The ALJ discussed this evaluation:

> Claimant's mental condition also was assessed by Emily Rummel, M.A., at the request of his attorney.  Ms. Rummel diagnosed claimant with significant depression and social phobia.  She opined claimant has marked limitation in activities of daily living, extreme limitations in social functioning, mild limitations in concentration, persistence, and pace, and no episodes of decompensation.  The undersigned assigns little weight to this opinion because the [Ms. Rummel] relied heavily on claimant's subjective complaints.

TR 17, *citing* TR 290-97.

The ALJ acknowledged Ms. Rummel's opinion, but discounted it because it was based "heavily" on Plaintiff's subjective complaints, which, as has been discussed above, the ALJ appropriately found to be less than fully credible.  Because the ALJ properly discounted Plaintiff's credibility, and because Ms. Rummel's opinion was "heavily" predicated upon Plaintiff's subjective complaints, the ALJ was not bound to accept Ms. Rummel's opinion regarding Plaintiff's limitations.  As can be seen in the quoted passage above, the ALJ appropriately discussed his reasons for finding that Plaintiff failed to meet the paragraph B criteria.  Accordingly, the only way Plaintiff could still meet or medically equal Listing 12.04 is by satisfying the paragraph C criteria.

Regarding episodes of decompensation as referenced in both paragraphs B and C, the Regulations explain:

18

> *Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

> The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be sued to substitute for the listed finding in a determination of equivalence.

20 CFR pt. 404, subpt. P, app.1 12.00(C)(4).

The ALJ's discussion regarding Plaintiff's not experiencing any episodes of decompensation for purposes of the "paragraph B" criteria is recounted above. Regarding decompensation for purposes of the "paragraph C" criteria, the ALJ explained:

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. . . . [C]laimant has not experienced an episode of decompensation, there is no evidence claimant will decompensate, and claimant has no history of an inability to function independently outside a highly supportive living arrangement.

TR 15.

As the ALJ's discussion of decompensation indicates, the record as a whole is devoid of

19

any evidence that Plaintiff experienced episodes of decompensation. Although Plaintiff himself acknowledges that no medical source indicated that he suffered from episodes of decompensation, Plaintiff maintains that he has, in fact, experienced such episodes. Docket No. 15. As support for his assertion, Plaintiff contends that he experienced difficulty taking Prozac and suffered suicidal thoughts and hostility when taking Wellbutrin. *Id.* As the ALJ noted above, however, the record does not substantiate that either of these medications resulted in episodes of decompensation as defined in the Regulations. As further support for his assertion, Plaintiff reported that he was either laid off or fired from fourteen jobs in a short period of time. TR 291. Plaintiff's employment history, however, does not constitute episodes of decompensation as defined in the Regulations. Thus, the ALJ properly noted that "claimant has not experienced an episode of decompensation, [and] there is no evidence claimant will decompensate." TR 15.

Additionally, Plaintiff's argument that his low GAF scores indicate that he meets Listing 12.04 is unavailing. Plaintiff is correct that Ms. Rummel assigned him a GAF score of 46 (TR 293), but GAF scores do not determine disability, nor do they determine whether a claimant meets or medically equals a Listing. As the Regulations require, and as has been discussed, in order to meet or medically equal Listing 12.04, Plaintiff had to either satisfy the paragraphs A and B criteria, or the paragraph C criteria, and regardless of Plaintiff's GAF scores, he has failed to do so.

The ALJ throughly discussed the medical and testimonial evidence of record when assessing the severity of Plaintiff's limitations, and when determining whether Plaintiff met or medically equaled Listing 12.04's requisite criteria. The Regulations do not require more. The

20

ALJ's decision stands.

### 3.  Residual Functional Capacity ("RFC")

Plaintiff contends that the ALJ improperly determined his RFC.  Docket No. 15.
Specifically, Plaintiff argues that his mental impairments preclude him from working on a
continuing and sustained basis, and that the ALJ's conclusion to the contrary is not supported by
substantial evidence.  *Id.*  Plaintiff asserts that the daily activities he described do not equate to
the ability to do work on a continuing and sustained basis.  *Id.*  Plaintiff additionally maintains
that he lost fourteen jobs in a short period of time because he lost his temper and did not interact
well with the public, and argues that these constitute "unsuccessful work attempts" that should
not be considered past relevant work.  *Id.*

Defendant responds that the ALJ properly assessed Plaintiff's RFC.  Docket No. 16.
Specifically, Defendant asserts that, when determining Plaintiff's RFC, the ALJ duly considered
the limitations that lead to Plaintiff's previous job loss—losing his temper and difficulty
interacting with the public.  *Id.*  Defendant argues that the ALJ's RFC determination properly
accommodates Plaintiff's need to minimize interpersonal interactions, but does not preclude all
work.  *Id.*  Regarding past relevant work, Defendant notes that the ALJ specifically found that
Plaintiff had not engage in substantial gainful activity since the alleged onset date.  *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the
individual retains the capacity for sustained performance of the physical-mental requirements of
jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c).  With regard to the evaluation of mental
abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your mental abilities, we first assess the nature
> and extent of your mental limitations and restrictions and then

determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and is responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(c). *See also* 20 C.F.R. § 416.945(c).

Plaintiff correctly states that a claimant's sporadic daily activities may not indicate what a claimant can do on a sustained basis. *See Cohen v. Secretary*, 964 F.2d 524 (6th Cir. 1992). The ALJ in the case at bar, however, properly considered the record in its entirety when determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis." The ALJ, after evaluating all of the objective medical evidence of record and the claimant's reported level of activity, determined that Plaintiff retained the Residual Functional Capacity to perform "a full range of work at all exertional levels but with the following non-exertional limitations: claimant should avoid work with the public and should not have frequent interaction with others." TR 15. This RFC determination accounts for the social functioning limitations that Plaintiff alleged contributed to his "unsuccessful work attempts."

Plaintiff is correct that his experience working at, and losing, fourteen jobs in a short period of time, does not constitute substantial gainful activity, and the ALJ reached the same conclusion. TR 13. In fact, the ALJ explicitly found, "Claimant has not engaged in substantial gainful activity since May 14, 2006, the alleged onset date." *Id.* It does not follow, however, that Plaintiff's past failed work experiences preclude him from engaging in substantial gainful activity in the future, with the appropriate restrictions. The ALJ explained, "the above residual functional capacity assessment is supported by the medical record which indicates claimant's

22

mental impairments cause some limitations in his ability to function in a work environment; however, those limitations are not substantial." TR 17. The ALJ properly evaluated the evidence in reaching this Residual Functional Capacity determination, and the Regulations do not require more. Accordingly, Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge

23